## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PROJECT ON GOVERNMENT OVERSIGHT, INC.** <br> 1100 13th Street, NW <br> Suite 800 <br> Washington, DC 20005, <br><br> **Plaintiff,** <br><br> v. <br><br> **U.S. DEPARTMENT OF HOMELAND SECURITY** <br> 245 Murray Lane, S.W. <br> Washington, DC 20528 <br><br> **Defendant.** | Civil Action No. |

## COMPLAINT

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §
552, and the Declaratory Judgment Act, 28 U.S.C. §§ 220 and 2202, for injunctive, declaratory,
and other appropriate relief. Plaintiff Project On Government Oversight, Inc. ("POGO")
challenges the failure of defendant U.S. Department of Homeland Security's ("DHS") Office of
Inspector General ("OIG") to provide POGO with all non-exempt documents responsive to four
separate FOIA requests POGO filed with the DHS OIG in 2022 for which DHS has failed to
make a determination within 20 business days as the FOIA requires.

### JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over the parties pursuant to 5 U.S.C. §§
552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28
U.S.C. § 1331.

3.      Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

**PARTIES**

4.      Plaintiff POGO is a nonpartisan independent organization based in Washington, D.C. and organized under section 501(c)(3) of the Internal Revenue Code. Founded in 1981, POGO champions reforms to achieve a more effective, ethical, and accountable federal government that safeguards constitutional principles. POGO's investigators and journalists take leads and information from insiders and verify the information through investigations using FOIA, interviews, and other fact-finding strategies. POGO's investigative work has been recognized by Members of Congress, executive branch officials, and professional journalism organizations. For instance, in 2015, POGO won the Robert D.G. Lewis Watchdog Award, the Society of Professional Journalists Washington, D.C. Professional Chapter's highest journalistic award, for reporting on the Department of Justice's opaque system for handling allegations of attorney misconduct within its ranks. In 2018, POGO won an award from the Society for Advancing Business Editing & Writing for its investigative series scrutinizing the government's oversight of offshore drilling. POGO extensively used records obtained under FOIA for this investigation.

5.      DHS and its subcomponent OIG are a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f) and have possession and control of the records POGO seeks in this action.

**STATUTORY BACKGROUND**

6.      FOIA requires federal agencies, upon request, to make records "promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless one or more specific statutory exemptions apply.

7.      The agency must provide the public records when they are requested in order "to ensure an informed citizenry, vital to the functioning democratic society." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978).

8.      An agency must make a determination on a FOIA request within twenty business days and notify the requester of which of the requested records it will release, which it will withhold and why, and the requester's right to appeal the determination to the agency head. 5 U.S.C. § 552(a)(6)(A)(i).

9.      The twenty-day deadline for an agency to make a determination on a request begins on the earlier of: (l) the date "the request is first received by the appropriate component of the agency" or (2) "ten days after the request is "first received by any component of the agency that is designated in the agency's regulations . . . to receive [FOIA] requests." 5 U.S.C. § 552(a)(6)(A)(ii).

10.     In unusual circumstances, an agency may extend the time limits the FOIA prescribes by written notice to the person making such request that sets forth the reasons for such extension and the date on which a determination is "expected" to be dispatched. No such notice shall specify a date that would result in an extension for more than ten working days. 5 U.S.C. § 552(a)(6)(B)(i).

11.     If an agency does not respond to a FOIA request by the statutory deadline, the requester is deemed to have exhausted administrative remedies and may immediately pursue judicial review. 5 U.S.C. §§ 552(a)(6)(C)(i), 552(a)(4)(B).

***Plaintiff's June 27, 2022 FOIA Request***

12.     On June 27, 2022, POGO submitted to the DHS OIG a FOIA request for that office's Report of Investigation resulting from a use of force incident where U.S. Border Patrol

Agent Romualdo Barrers shot and killed Claudia Gomez Gonzalez on May 23, 2018, in Rio Bravo, Texas, while she was walking with a group of other migrants. The requested documents included any and all recommendations for disciplinary action that DHS OIG submitted to the Customs and Border Protection ("CBP") Human Resources Management ("HRM").

13.     POGO's FOIA request followed significant media reporting concerning the killing of Ms. Gomez Gonzalez and conflicting statements from CBP concerning the incident. Initially CBP released a statement claiming the agent who killed Ms. Gomez Gonzalez was attacked by a group of migrants with "blunt objects." After a witness to the killing, Marta Martinez, posted a video of the incident on Facebook CBP released another statement claiming the group rushed the agent, but made no mention of an attack or any blunt objects.

14.     POGO sought a waiver of fees for processing its FOIA request because disclosure of the requested documents is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in POGO's commercial interest.

15.     In support of its fee waiver request POGO pointed to the CBP Use of Force Policy Handbook that says, "a respect for human life and the safety of the communities we [CBP] serve, as well as CBP's officers and agents, is paramount and shall guide all employees in the performance of their duties." As POGO explained, given the magnitude of the incident in which Ms. Gomez Gonzalez was killed, the volume of media reporting on the incident, and the loss of life it is in the public interest to know if the DHS OIG investigated this use of force and what the findings of that investigation were.

16.     By letter dated July 20, 2022, DHS OIG acknowledged receiving POGO's request and stated it anticipated responding to the request within 20 business days. DHS OIG further stated it had granted POGO's request for a fee waiver.

17.     To date, POGO has received no subsequent response to its June 27, 2022 FOIA request.

18.     Under 5 U.S.C. § 552(a)(6)(C)(i), POGO has now effectively exhausted all applicable administrative remedies with respect to its June 27, 2022 request.

*Plaintiff's August 10, 2022 Freedom of Information Act Request*

19.     On August 10, 2022, POGO submitted to the DHS OIG a FOIA request for that office's Report of Investigation ("ROI") resulting from CBO's use of force against Anastasio Hernández Rojas on May 28, 2010, including all recommendations for disciplinary action that DHS OIG submitted to CBP HRM related to the incident that resulted in Mr. Hernández Rojas's death while in CBP custody.

20.     POGO's August 10 FOIA request outlined the series of events that led to Mr. Hernández Rojas's death, starting with his interception by U.S. Border Patrol agents while attempting to cross the U.S.-Mexico border. Once in detention Mr. Hernández Rojas alleged he was assaulted by an agent and was subsequently struck by Border Patrol agents wielding batons during his transport for removal to Mexico. Accounts conflict about what happened during the ensuing struggle, but witnesses described agents kicking and punching him and kneeling on his body and head. After Mr. Hernández Rojas became motionless agents were unable to revive him with CPR. Mr. Hernández Rojas was pronounced dead on June 1, 2010, at Sharp Chula Vista Hospital.

21.     Two subsequent autopsies ruled the immediate cause of Mr. Hernández Rojas's death was anoxic encephalopathy or brain damage from a lock of oxygen, and both ruled the matter death by homicide. Despite this evidence, a November 6, 2015 press release from the U.S. Department of Justice stated that Mr. Hernández Rojas would not have died had there not been

methamphetamine intoxication. The Inter-American Commission on Human Rights stated that the claim that the medical examiner had made this claim was "erroneous."

22.     POGO requested a waiver of fees for processing its FOIA request because disclosure of the requested documents is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in POGO's commercial interest.

23.     In support of its fee waiver request POGO pointed to the CBP Use of Force Policy Handbook that says, "a respect for human life and the safety of the communities we [CBP] serve, as well as CBP's officers and agents, is paramount and shall guide all employees in the performance of their duties." As POGO explained, given the magnitude of the incident that led to Mr. Heránez Rojas's death, the volume of media reporting on the incident, and the loss of life it is in the public interest to know if the DHS OIG investigated this use of force and what the findings of that investigation were.

24.     To date, POGO has received no response from DHS OIG to its August 10, 2022 FOIA request.

25.     Under 5 U.S.C. § 552(a)(6)(C)(i), POGO has now effectively exhausted all applicable administrative remedies with respect to its August 10, 2022 request.

*Plaintiff's August 22, 2022 FOIA Request*

26.     On August 22, 2022, POGO submitted a FOIA request to DHS OIG for records related to that office's investigation into a use of force incident on June 16, 2021, in Nogales, Arizona where Marisol García Alcántara was injured by a bullet to her head that was fired into the vehicle in which she was a passenger. The request included all recommendations for disciplinary action that DHS OIG submitted to CBP HRM related to the incident.

27.     POGO's August 22 request outlines the facts underlying its request, including that Ms. García Alcántara had filed a Federal Tort Claim Act complaint against CBP and that there had been significant media interest in this case, including in the investigation that followed.

28.     POGO requested a waiver of fees for processing its FOIA request because disclosure of the requested documents is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in POGO's commercial interest.

29.     In support of its fee waiver request POGO pointed to the CBP Use of Force Policy Handbook that says, "a respect for human life and the safety of the communities we [CBP] serve, as well as CBP's officers and agents, is paramount and shall guide all employees in the performance of their duties." As POGO explained, given the magnitude of the incident, the volume of media reporting on the incident, and the loss of life it is in the public interest to know if the DHS OIG investigated this use of force and what the findings of that investigation were.

30.     POGO further explained that the public's need for the requested information to assess CBP's compliance with its own use of force policy is heightened by the conflict between Ms. García Alcántara's account of the incident and what CBP officials told local Nogales police had happened. Although CBP's critical Incident Team carried out an initial investigation its findings have not yet been made public.

31.     By letter dated August 29, 2022, DHS OIG acknowledged receiving POGO's request and stated it anticipated responding to the request within 20 business days. DHS OIG further stated it had granted POGO's request for a fee waiver.

32.     To date, POGO has received no subsequent response to its August 22, 2022 FOIA

request.

33.     Under 5 U.S.C. § 552(a)(6)(C)(i), POGO has now effectively exhausted all applicable administrative remedies with respect to its August 22, 2022 request.

*Plaintiff's August 30, 2022 FOIA Request*

34.     On August 30, 2022, using DHS's online portal, POGO submitted a FOIA request seeking three categories of records. First, POGO sought records in the possession of designated DHS OIG personnel regarding communications with congressional staff using 12 specified terms. Those terms include: (1) the Integrity Committee; (2) Council of the Inspectors General on Integrity and Efficiency; (3) CIGIE; (4) Horowitz; (5) Lerner; (6) Winters; (7) Soskin; (8) Costello; (9) the Transportation Department Office of Inspector General; (10) POGO; (11) Project on Government Oversight; and/or (12) WilmerHale. The request identified the following personnel whose records were to be searched: Inspector General Joseph Cuffari; Chief of Staff Kristen Fredricks; Principal Deputy Inspector General Glenn Sklar; and Counsel James Read. The request further identified congressional staff email addresses as including "senate.gov" and mail.house.gov."

35.     Second, POGO's August 30 FOIA request sought copies of any final or draft letters sent or received between August 1, 2019 through the present in the possession of DHS OIG that were ultimately sent by members of Congress to the Department of Transportation Office of Inspector General concerning an Integrity Committee investigation involving DHS OIG leadership. The request specified that the DHS OIG personnel whose records are to be searched are Inspector General Joseph Cuffari, Chief of Staff Kristen Fredricks, Principal Deputy Inspector General Glenn Sklar, and Counsel James Read.

36.     Third, POGO's August 30 FOIA request sought any records, including but not limited to emails, documenting the transmission of an April 19, 2013 Department of Justice Office of Inspector General memorandum on Joseph Cuffari to the DHS OIG between January 1, 2020 and August 2, 2022. The request specified that the DHS OIG personnel whose records are to be searched are Inspector General Joseph Cuffari, Chief of Staff Kristen Fredricks, Principal Deputy Inspector General Glenn Sklar, and Counsel James Read.

37.     POGO's request explained by way of background that in June 2021, Inspector General Cuffari disclosed in writing to Congress the existence of an ongoing Integrity Committee investigation into him for allegedly retaliating against former senior employees in his office (the Integrity Committee is part of the Council of the Inspectors General for Integrity and Efficiency).  In January 2022, Cuffari's Principal Deputy Inspector General Glenn Sklar emailed all 700+ employees inside the DHS Office of Inspector General and instructed them to cooperate with the Integrity Committee investigation, including with the Department of Transportation Office of Inspector General, which is providing investigative support to the Integrity Committee.

38.     Despite these instructions, as recently reported by the *Washington Post*, Cuffari and his top aides enlisted the support of certain members of Congress to oppose the Integrity Committee's requests for certain documents and information in this investigation. Lisa Rein, Under fire, Homeland Security watchdog delays probe—with GOP help, *Washington Post*, Aug. 12, 2022, https://www.washingtonpost.com/politics/2022/08/12/joseph-cuffari-homeland-security-watchdog-investigation/. The *Washington Post* story cites letters sent by Senator Josh Hawley in the spring of 2022 to Transportation Department Inspector General Eric Soskin that pushed back against Soskin's requests for records in the investigation. *Id.* The first two parts of

POGO's records request concern efforts by Cuffari and his top aides to obstruct an investigation into him by leveraging congressional pressure to impede that investigation.

39.     POGO further explained that the third part of its request concerns the accuracy and candor of the DHS Office of Inspector General's leadership in responding to a media query concerning substantiated allegations of past wrongdoing by Inspector General Cuffari, as revealed in an April 19, 2013 memorandum by the Justice Department's Office of Inspector General that the chairs of two congressional committees released on August 3, 2020. The 2013 memorandum documented findings of ethical violations by Mr. Cuffari when he was still a criminal agent employed by the Justice Department Office of Inspector General as well as several instances where federal investigators deemed his accounts of his actions implausible.

40.     An unnamed DHS Office of Inspector General spokesperson told the *Washington Post* that Mr. Cuffari "has not received nor seen the report to which you refer." POGO explained, however, its understanding that the 2013 memorandum was transmitted to DHS OIG in 2020. In 2019, Mr. Cuffari told the U.S. Senate in writing that he "answered the [Justice Department] IG staff's questions truthfully and completely" during the course of the investigation into him.

41.     DHS acknowledged receipt of the FOIA on August 30, 2022, via an automated email.

42.     To date, POGO has received no subsequent response to its August 30, 2022 FOIA request.

43.     Under 5 U.S.C. § 552(a)(6)(C)(i), POGO has now effectively exhausted all applicable administrative remedies with respect to its August 30, 2022 request.

## PLAINTIFF'S CLAIMS FOR RELIEF

### CLAIM ONE
### (Wrongful Withholding of Non-Exempt Records)

44.     Plaintiff repeats and re-alleges paragraphs 1-43.

45.     With its June 27, 2022, August 10, 2022, August 22, 2022, and August 30, 2022 FOIA requests Plaintiff properly asked for records within the custody and control of the U.S. Department of Homeland Security.

46.     Defendant DHS wrongfully withheld agency records requested by Plaintiff by failing to comply with the statutory time limit for making a determination on Plaintiff's FOIA June 27, 2022, August 10, 2022, August 22, 2022, and August 30, 2022 FOIA requests and by withholding from disclosure records responsive to Plaintiff's four requests of the DHS OIG.

47.     Plaintiff POGO is therefore entitled to injunctive and declaratory relief with respect to the immediate processing and disclosure of the records requested in its June 27, 2022, August 10, 2022, August 22, 2022, and August 30, 2022 FOIA requests.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)     Order Defendant to immediately and fully process plaintiff's June 27, 2022, August 10, 2022, August 22, 2022, and August 30, 2022 FOIA requests and to disclose all non-exempt documents immediately and at no cost to Plaintiff;

(2)     Issue a declaration that Plaintiff is entitled to the immediate and expedited processing and disclosure of the requested records at no cost to Plaintiff;

(3)     Provide for expeditious proceedings in this action;

(4)     Retain jurisdiction of this action to ensure no agency records are wrongfully withheld;

(5)     Award Plaintiff its costs and reasonable attorneys' fees in this action; and

(6)     Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

 */s/ Anne L. Weismann*
Anne L. Weismann
(D.C. Bar No. 298190)
5335 Wisconsin Avenue, N.W.
Suite 640
Washington, D.C. 20015
(301) 717-6610
weismann.anne@gmail.com

Dated: October 12, 2022                    *Attorney for Plaintiff*